FILED

MAY 0 6 2005

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| AMERICAN PRAIRIE CONSTRUCTION CO., formerly known as North Central Construction, Inc., | \* \* \* \* | CIV 04-1016 **2005 DSD 9** |
| Plaintiff, | \* \* |  |
| -vs- | \* \* | ORDER/OPINION |
| TRI-STATE FINANCIAL, LLC; JOHN HOICH; JERROLD L. STRASHEIM; BAIRD, HOLM, MCEACHEN, PEDERSEN, HAMANN & STRASHEIM LLP; and the UNNAMED DEPOSITORS OF $2.5 MILLION IN THE BAIRD HOLM TRUST ACCOUNT, | \* \* \* \* \* \* \* \* | |
| Defendants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, DISTRICT JUDGE**

[¶ 1]   We have a pending motion for summary judgment (Doc. 65) filed on behalf of defendants Strasheim and the law firm of Baird, Holm, McEachen, Pedersen, Hamann, and Strasheim (collectively "law firm"). The summary judgment is sought as to all claims of plaintiff ("APCC"). APCC resists the motion or at least seeks delay pursuant to Fed.R.Civ.P. 56(f). These parties have complied with the Federal Rules of Civil Procedure and the local rules in the District of South Dakota. The court has read all moving papers and papers in resistance and is familiar with the entire file.

[¶ 2]   The summary judgment standard is well known and has been set forth by this court in numerous opinions. See Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98.

[¶ 3]   A brief recitation of the facts is appropriate. APCC or its predecessor built an ethanol plant for Tri-State Financial, L.L.C. ("TSF"). APCC has been at all times a secured creditor of TSF. The business failed and TSF filed for bankruptcy. Defendant John Hoich ("Hoich") was the principal investor in TSF. The weekend before a scheduled hearing in bankruptcy court, Hoich on behalf of TSF met with a representative of APCC and the parties agreed that TSF would obtain funds from "investors", including apparently Hoich, and pay APCC $2.5 million in exchange for an assignment of all claims of APCC against TSF. The attorneys for both sides recited the settlement on the record in bankruptcy court and the hearing did not proceed.

[¶ 4]   TSF obtained $2.5 million and at various times deposits were made into the trust account of the law firm, all of this having been accomplished by July 29, 2004. The deposits were made for the purpose of making the payment to APCC called for by the settlement. TSF and Hoich later insisted on something that had not been made part of the "deal", namely that the bankruptcy court must first confirm the TSF bankruptcy plan. APCC would not agree to this rather substantial change and the settlement came apart. The investors then demanded a return of the funds and the law firm complied. All refunds were made prior to August 6, 2004.

[¶ 5] APCC then brought suit against the named defendants. APCC sued the law firm for damages and also sought an injunction to prohibit the return of the funds by the law firm. The affidavit of attorney Strasheim (Doc. 68) sets forth the unchallenged facts as to what happened. All refunds were made before the present law suit was started and before the law firm had any idea that it would be sued by APCC. In other words, there is nothing to indicate that there was any "preemptive strike." APCC does not claim otherwise.

[¶ 6] The best that can be said on behalf of APCC is that the law firm agreed to a settlement on behalf of its client, TSF, an empty shell corporation, and TSF (likely with the connivance of Hoich) did not do what TSF had represented to the bankruptcy court would be done. Hoich was not present personally or through a lawyer at the bankruptcy hearing. Clients sometimes have second thoughts or regrets and attempt to change the terms of a settlement. When this happens, and it does, the law firm is obligated to withdraw from further representation of the breaching client. Hoich clearly was not represented by any lawyer, at least on the record, in connection with the settlement.

[¶ 7] The court should perhaps have granted the earlier motion to dismiss. That motion was denied in perhaps an over abundance of caution. As a matter of law, no express trust was created or existed between the law firm and APCC. As a matter of law, no implied trust was created or existed between the law firm and APCC. Lawyers have a difficult enough time answering to their clients without being required to answer to an adverse party. The law firm did not by words or acts promise APCC to do anything personally or to act contrary to the directives of the clients of the law firm. The promise came from TSF only but did not deal with the funds in the trust account of the law firm. When a client or anyone else demands a return of money paid into the trust account of the law firm, the law firm is required to refund the money promptly, unless restrained by some lawful order. To do otherwise would create a conflict between the law firm and the client and breach the professional obligations of the law firm to the client. The fact that a law firm agrees to receive a deposit into its trust account in connection with a purported settlement does not transform the matter into a trust relationship between the law firm and the adverse party. The law firm could not and did not agree to pay any money without the express authorization of the client or clients. Without a trust existing, there would be no beneficiary of

any claimed trust. The only trust that existed was between the law firm and its client or clients, the legal owners of the money.

[¶ 8] Assuming everything to be true in the Rudeen affidavit (Doc. 7), Rudeen being the negotiating representative on behalf of APCC, no trust ever existed as claimed by APCC. There is no genuine issue of any material fact as to that. The only settlement and the only agreement was between APCC and TSF. There was certainly no settlement between APCC and the law firm representing TSF. I find that the law firm had no relevant material legal duty of any kind to the adverse party, APCC. Hetzel v. Parks, 971 P.2d 115 (Wash.Ct.App. 1999), is not on point, especially as to South Dakota law. There was no "misuse" of trust funds. In fact, the legal duty, as already explained, existed to make the refunds upon demand. I adopt the legal principle that allowing claims of the kind advanced by APCC under the facts of this case would only serve to "dilute the vigor with which [attorneys in this jurisdiction] represent their clients." See Chapman Children's Trust v. Porter & Hedges, L.L.P., 32 SW3d 429, 440 (Tex App 2000), quoting from Taco Bell Corp. v. Cracken, 939 F.Supp. 528, 532 (ND Tex 1996).

[¶ 9] In addition, equity would not permit what is attempted here by APCC. There is no basis for any implied or constructive trust when the money has been already returned by the law firm. The law firm had nothing in trust when this lawsuit was started. Without assets, the claimed trust would attach to nothing.

[¶ 10] APCC claims to be entitled to an "accounting." APCC would be entitled to an "accounting" only if the funds were still held by the law firm when this action was commenced. With the refunds having been made, there is no asset to be subjected to an accounting. The request for an accounting assumes that liability of some kind exists. No such liability exists.

[¶ 11] The court denied the earlier motion to dismiss, thinking that APCC would be entitled to discover whether or not the refunds actually had been made as claimed by the law firm. APCC is apparently now satisfied as to that and does not claim that there is any genuine issue of material fact as to such question. The curiosity of APCC as to the source of the funds and the details of the unnamed persons who made the deposit or deposits into the trust account does not create a genuine issue of any material fact, as between APCC and the law firm. These are "so what" questions and issues. I erred in speculating in the earlier Order (Doc. 58) as to various possible other issues. This includes the relationship between Hoich and the law firm and the individuals

to whom the money was refunded. These are not genuine issues of material fact which would prevent the granting of the motion for summary judgment to the law firm. What is going on in bankruptcy court as to TSF and APCC is of no concern in the action in district court. Further, the matter of claimed "public interest" in completing settlements has no connection with what APCC seeks in this action. The law firm did not guarantee performance by its client or that its client would not instruct the law firm to comply with the terms of the settlement (apparently reached by Hoich personally with APCC without the direct assistance of any lawyer). No law firm would be so foolish as to start down that road, especially when representing an insolvent client.

[¶ 12] APCC may possibly have been entitled to an injunction, although admittedly only by virtue of a large stretch as to the law, if the funds had not been returned. The Strasheim affidavit (Doc. 68) showing, without challenge, that the funds were returned, there is nothing to enjoin.

[¶ 13] There is nothing to discover of any relevance. There are no genuine material facts to be learned from discovery. Fed.R.Civ.P. 56(f) does not and should not prevent summary judgment from being entered in this case.

[¶ 14] There are no genuine issues of material fact and the motion for summary judgment should be granted.

[¶ 15] Now, therefore,

[¶ 16] IT IS ORDERED, as follows:

    1) The motion for summary judgment (Doc. 65) is granted.

    2) Costs shall be taxed as provided by law.

    3) The caption shall be hereafter amended to delete Strasheim and the law firm as defendants.

[¶ 17] Dated this 6th day of May, 2005.

BY THE COURT:

_____
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
               DEPUTY
(SEAL)

5