

FILED

JUL 2 5 2007

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| AMERICAN PRAIRIE CONSTRUCTION CO., formerly known as North Central Construction, Inc., | \* \* \* | CIV 04-1016 |
| Plaintiff, | \* \* | |
| -vs- | \* \* \* | AMENDED ORDER AND OPINION |
| TRI-STATE FINANCIAL, LLC and JOHN HOICH, | \* \* \* | |
| Defendants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This case has been pending before me since August 4, 2004. Plaintiff (American Prairie Construction Co., formerly known as North Central Construction, Inc., hereinafter "NCC") sought a temporary restraining order (Doc. 5). NCC's chief executive officer filed an affidavit (Doc. 7) which included as an attachment the transcript of a purported settlement reached between NCC and Tri-State Financial, LLC. ("TSF") in open court in the presence of since retired United States Bankruptcy Judge Hoyt on June 21, 2004. Attorney Ronald Hall spoke for NCC and attorney Jerrold L. Strasheim ("Strasheim") spoke for TSF. Attorney Pokela "signed onto" the "settlement" on behalf of the debtor in the bankruptcy case, namely Tri-State Ethanol, L.L.C. ("TSE").

Attorney Strasheim's law firm collected $2.5 million from unknown sources and had these funds in its trust account to pay to NCC as called for by the "settlement." The law firm and TSF determined that the "settlement" was not final or binding and had returned the $2.54 million to the unknown sources prior to the instant action being commenced. The motion for a temporary restraining order (to tie up the funds in trust) was denied by the court on August 25, 2004 (Doc. 20).

Defendant John Hoich ("Hoich"), apparently the principal investor in TSF, filed a motion to dismiss (Doc. 27). Defendants and the law firm filed a motion (Doc. 39) to dismiss the complaint as to them. NCC resisted the motions. After extensive briefing and various extensions of time for the parties to file documents, the court denied the motions to dismiss (Doc. 58) on January 5, 2005.

Attorney Strasheim and his law firm then filed a motion for a summary judgment (Doc. 65). NCC filed a Rule 56(f) response and an alternative response to the summary judgment motion (Doc. 76). On May 6, 2005, this court entered an Order/Opinion (Doc. 82), granting the motion for summary judgment and taxing costs against NCC.

The court has entered various scheduling orders.

On January 6, 2006, attorney David L. Nadolski, filed on behalf of TSF a status report (Doc. 93). He advised that no discovery had taken place in the case. As an officer of the court, he advised also as follows: "I have been led to believe by attorneys in the mediation (before United States Magistrate Judge John Simko) that a settlement may have been reached and the remaining work to be done on that settlement is the drafting of the agreement and approval by Judge Hoyt. I have talked to the attorney for Mr. Hoich, one of the other defendants and believe that he too may file a motion for a modification of the scheduling order if the mediation is not successful." As I found in the comprehensive order and opinion stemming from the appeals from bankruptcy court, Judge Simko reported to Judge Hoyt that the case had been settled and successfully mediated. I obviously put some credence in statements made by other judges. I also gave credence to the representations by attorney Nadolski. I assumed he was accurately reporting matters to the court.

NCC moved (Doc. 94) to vacate the scheduling order, representing to the court that a compromise settlement had been reached in the presence of Judge Simko, subject only to approval by the bankruptcy court. On April 19, 2006, the present action was stayed pending approval of the claimed compromise settlement by the bankruptcy court.

Having heard nothing further from counsel or the parties, I directed counsel for NCC on February 2, 2007, to provide a status report. Attorney Hall submitted his version of what had happened (Doc. 99) and the court then entered an order for a Form 35 report (Doc. 100). The

2

parties filed the Form 35 Report (Doc. 102) on May 29, 2007. I sent all counsel a memorandum (Doc. 103) to advise that the dates suggested by the parties were not acceptable to me and advising that the trial would be conducted on August 2 and 3, 2007. An Order (Doc. 104) was entered to this same effect on June 1, 2007.

The parties then filed an amended Form 35 Report (Doc. 106) which has not yet been approved by the court. The parties stated, *inter alia*: "The parties have agreed such amended pleadings may be served within such deadlines without leave of Court." TSF filed a purported amended answer (Doc. 107) without leave of court and after a trial date had already been set. The caption of the purported amended answer was also incorrect since it continued to include parties who had been previously granted a summary judgment. On June 19, 2007, a memorandum (Doc. 108) was sent to counsel, setting forth that the amended answer was a nullity, and observing that TSF "has a rather significant history of not following the rules." Even a cursory review of all the proceedings and the appeals from the bankruptcy cases would show that to be true.

All parties are fully aware that this court in the last year has more than once chastised TSF and its various attorneys for local rule violations and violations of the Code of Professional Conduct. The court does not retreat from those findings and those conclusions.

All parties are or should have been also fully aware that this court is required to file a report as to any case pending more than three years. The federal judges in South Dakota have agreed to do our very best to be sure that we dispose of all cases within that time frame so that we do not have to report our failures to act promptly. It is a matter of pride for the judges to dispose of cases within the deadlines. To accomplish this goal, I moved up the trial date, contrary to the wishes of counsel for all parties.

The next development was the filing of a motion for recusal and disqualification by attorneys Stuart T. Williams, Court J. Anderson, and Eugene R. Robinson on behalf of defendant Hoich (Doc. 111) and the identical motion (Doc 109) filed by attorney David L. Nadolski on behalf of TSF. These motions and the supporting papers were filed on June 21, 2007.

NCC had, pursuant to local rules, 20 days to respond to the motion plus three additional days and that would have called for a response by July 16. In fact, on that date, the response of

3

NCC (Doc. 132) was filed. Defendants then had 10 days in which to respond. Such briefing schedule would have placed the matter before the court on July 26, at the earliest. Adding three days would have provided a deadline of July 30, the Monday of the week of trial, trial being set for August 2 and 3, 2007. The defendants filed on July 18, 2007, the permitted reply briefs (Docs. 135 and 138), short of their deadlines and the court has considered all arguments and authorities.

There has been nothing before the court to request any shortening of the briefing schedule. There was no stipulation to do so. As the court previously advised counsel, I would not *sua sponte* shorten the briefing schedules, especially with counsel having continued to prepare for trial.

As I previously noted, no party has asked the court to order a jury trial pursuant to Fed.R.Civ.P. 39(b). I could, of course, order an advisory jury pursuant to Rule 39(c).

A status conference was conducted on the record on July 3, 2007. All parties were asked about any desire for a jury to be utilized. The court told counsel that, even if requested at such late date, the court would order a jury empaneled to try all issues of fact. All parties declined such offer and represented that, if the motions to recuse were to be denied, they would prefer a trial to the court.

During the bankruptcy proceedings involving these same parties, TSF and its attorneys repeatedly engaged in unethical and improper conduct. They accused Bankruptcy Judge Hoyt of repeated acts of misconduct, of twice lying to the parties and the attorneys, running a "kangaroo court", and being "out to get" attorney Strasheim, James Jandrain, TSF and others.

They accused, without even a shred of evidence to support the accusation, a bankruptcy judge from Minnesota of receiving and improperly considering *ex parte* communications from Judge Hoyt. They accused the Minnesota judge of acting without any authority to act, ignoring the fact that the Chief Judge of the United States Court of Appeals for the Eighth Circuit had, on December 7, 2005, entered an order designating Judge Kressel of the District of Minnesota to act in connection with South Dakota bankruptcy matters.

They charged that the present recently appointed bankruptcy judge in the District of South Dakota could not be trusted to handle any of the other matters pending before that court

4

involving attorney Strasheim and TSF and demanded the designation of a bankruptcy judge from Iowa.

They procured and filed in the bankruptcy court and in the district court a scandalous affidavit which stated opinions and conclusions rather than facts. The affidavit procured, drafted by, and submitted by TSF and attorney Strasheim claimed that the bankruptcy court proceedings "were an exercise in gamesmanship," that Judge Hoyt's threat to continue hearings "bordered on blackmail", that Judge Hoyt engaged in "legal gymnastics", that Judge Hoyt was "favoring the Australians", that attorneys John Lovald (the bankruptcy trustee) and his attorney (Robert Hayes) were acting improperly and were "only doing what the judge told them to do", that the bankruptcy proceedings were conducted as a "kangaroo court", and that unnamed people in Rosholt would be unhappy with the rulings of Judge Hoyt. TSF and attorney Strasheim thus also charged the trustee with unethical conduct and not fulfilling his independent obligations as an attorney but being, in effect, under the thumb of Judge Hoyt. TSF and attorney Strasheim also claimed that Judge Hoyt was prejudiced against defendant Hoich because of his great wealth and because Hoich had allegedly sexually harassed Judge Hoyt's law clerk. TSF and attorney Strasheim charged that the bankruptcy trustee violated his fiduciary responsibilities. TSF and attorney Strasheim made the same accusations against the attorney for the trustee, Robert Hayes of Sioux Falls, SD, a well respected attorney and past president of the State Bar of South Dakota. TSF and attorney Strasheim also challenged the award of legal fees to Hayes, claiming that he had acted under a conflict of interest. TSF and its attorneys have consistently engaged in practices of "slash and burn." In the years since my admission to the bar in 1962 and since taking office as a United States District Judge in 1995, I have not previously witnessed such a course of action by a litigant and its attorneys. When presiding over litigation, I am not required to turn a blind eye to such conduct by a litigant and its attorneys and I do not intend to do so. In fact, I have an obligation not to do so.

TSF and its attorneys in the bankruptcy court and in the district court repeatedly violated or ignored rules of procedure. Attorney Strasheim submitted and caused to be filed documents (including the motion seeking the recusal of Judge Hoyt) without the signature of local counsel as required by the local rules. They filed several "motions for reconsideration." Motions for

5

reconsideration should not have been filed and TSF cited no authority which would permit, much less require, a reconsideration. The Federal Rules of Civil Procedure do not allow a "motion to reconsider." *See* Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1081 (8th Cir. 1993), and In re Trout, 984 F.2d 977, 978 (8th Cir. 1993) (warning counsel that the Federal Rules of Civil Procedure do not provide for a motion for reconsideration and directing counsel to properly designate a motion under the rule authorizing the motion). The process of seeking reconsideration could be transformed into an endless chain of motions, filing a motion to reconsider the denial of the motion to reconsider, *ad infinitum*. As now Chief Judge Loken observed in his opinion in Wilkins v. Hartford Life and Accident Insur. Co., 299 F.3d 945, 948 (8th Cir. 2002): "Such motions (to reconsider) are frequently a futile waste of time for both the parties and the trial court." *See also* Broadway v. Norris, 193 F.3d 987, 990 (8th Cir. 1999) (Rule 60(b) motion is not for purpose of rearguing, somewhat more fully, merits of claim).

TSF took another earlier appeal from the bankruptcy court to this court on February 23, 2006. I dismissed that appeal on April 12, 2006, finding that the appeal was "totally without merit" and that I had no jurisdiction over the bankruptcy court's interlocutory order regarding the mediated settlement. The appeal of TSF to the district court was frivolous. TSF appealed my ruling to the United States Court of Appeals for the Eighth Circuit on April 27, 2006, and dismissed the appeal by motion on May 22, 2006. Such second appeal was also frivolous as a matter of law.

In taking later appeals from the bankruptcy court to this court, TSF and attorney Strasheim, in their initial brief, filed an over length brief in violation of then D.S.D.LR 7.2(B). The brief also was filed in violation of the professional obligations of members of the bar. As I have already explained, it contained scandalous material; it was filled with many scurrilous accusations against Judge Hoyt, other judges, and attorneys involved in this case. I ordered the brief stricken and to be filed under seal. I filed an extensive order and opinion (Doc. 37 in CIV 06-1040) on January 3, 2007, which I incorporate by reference in this Order and Opinion.

I filed another Order and Opinion (Doc. 45 in CIV 06-1040) on February 2, 2007. I ruled on a TSF motion (Doc. 21 in CIV 06-1043, no comparable motion having been filed in CIV 06-1040). I set forth in such Order and Opinion that counsel for TSF were trying to "set up" the

district court by filing a motion asking the court to direct what material could be included in a
TSF brief covering one of the issues on appeal. Of course, no responsible judge would do
anything of the kind. I also set forth that counsel for TSF had engaged in "a blatant misstatement
of the record." I continue to adhere to such findings and conclusions.

 As to the seven appeals taken to this court from the bankruptcy court, Mr. Strasheim
signed each notice of appeal (as he has done in all his other appeals to district court) although he
had not been admitted to practice in district court in any of those cases. These actions would be
additional violations of the rules of practice.

 I found and concluded many months ago that the recusal motion as to Judge Hoyt was not
made in good faith but for the improper purpose on the part of TSF and Strasheim to cause
further delay and harassment of the trustee, other attorneys, creditors, and Judge Hoyt.

 To further show the depths to which the appeals from the bankruptcy court sunk, the
trustee filed motions to disqualify attorney Strasheim as *pro hac vice* counsel in these various
cases. The trustee also filed motions seeking an award of attorney fees and costs against attorney
Strasheim for the claimed misconduct of the TSF attorneys. On April 23, 2007, I entered an
Order and Opinion (Doc. 60 in CIV 06-1040 and Doc. 52 in CIV 06-1043) referring what I
believed was a request for disciplinary action to Chief Judge Schreier. The referral was pursuant
to D.S.D.LR 83.2(G)(2). This included the motions to disqualify and the motions for sanctions.
I have never previously seen a motion seeking to remove *pro hac vice* counsel from participation
in a case.

 Certainly, TSF, Hoich, and attorney Strasheim have known for many months what this
court has thought of their conduct and tactics in bankruptcy court and in connection with the
appeals filed. If they thought that this court should recuse based upon such beliefs, the motion
should have been made long ago and not on the eve of trial.     Apparently
recognizing the last minute (and then some) nature of the motions, attorney Stuart T. Williams,
claiming to be the "lead counsel" for Mr. Hoich, states more than once that he was not following
the bankruptcy court proceedings involving his client, the principal investor in TSF. He also
claims to not having followed the district court proceedings involving Mr. Hoich and TSF. The
short answer to this is: he should have been following them and following them very closely. It

7

is also immaterial what he was doing or not doing. His client was following all the proceedings and had full knowledge of the previous rulings and statements of this court at the time they were issued.

I give almost no credence to the affidavit of James G. Jandrain (Doc. 114). Mr. Jandrain was the accountant for TSE and perhaps was also the accountant for TSF at the same time. At the same time, he sat on the board of managers of TSE and filed a claim in the bankruptcy action of TSE, seeking more than $50,000.00 for claimed accounting services rendered to TSE. I found previously that Mr. Jandrain had "blatant" conflicts of interest in his various capacities. The bankruptcy court denied his claim. He appealed and I ruled against him on the appeal, finding that his appeal was totally without merit and was frivolous. Mr. Jandrain also attempted to force the recusal of Judge Hoyt, joining in the outrageous and false charges made against Judge Hoyt. Mr. Jandrain has an axe to grind. A disappointed former litigant found to have engaged in misconduct may, of course, prefer another judge for a later case.

28 U.S.C. §455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The question is whether the impartiality of the judge "might reasonably be questioned by the average person on the street who knows all of the relevant facts." In re Kansas Public Retirement System, 85 F.3d 1353, 1358 (8th Cir. 1996). The existence of "actual bias" need not be shown. Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (*en banc*). 28 U.S.C. § 455(b) provides that a judge "shall also disqualify himself . . . (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . ."

Having said all this, however, the basis for the present recusal motions stems solely from language in orders and opinions issued by this court in connection with the appeals taken by TSF from rulings of the bankruptcy judges. TSF and its attorneys had claimed that Judge Hoyt had made harsh remarks to them. The basis of the language I used stems from my findings that Judge Hoyt would understandably have been irritated by TSF twice entering into at least two purported settlements on the record in the presence of two federal judges and then refusing to complete the process. I erred in stating that settlements had been reached. In fact, they may or may not have been reached and the trial of this action will answer that question. I noted also that Judge Hoyt

8

refused to enforce either "settlement" although moved to do so by NCC as to at least one of the "settlements."

Despite statements made in previous opinions by this court in connection with the TSF appeals from bankruptcy court (seven of them), I have no personal knowledge of disputed evidentiary facts involved in the present case. I know only what Judge Hoyt and Judge Simko stated had occurred. I did not read (and still have not read) the transcripts of the "settlement hearings" in bankruptcy court or magistrate court because the questions of settlements and the terms thereof had no bearing on the cases I was considering and on which I was ruling. I do know that attorney Strasheim previously argued subject matter jurisdiction of the bankruptcy court to enforce any settlement and argued that he and TSF would not recognize the record made at the conclusion of the mediation session on July 26, 2005, as being the best record of the "core agreements" reached that day. I am unclear as to whether the Strasheim claim was that the court reporter acted improperly or failed to "take down" what was said. In any event, Judge Hoyt did not enforce this claimed settlement.

I know also what attorney Nadolski represented to the court as relayed to him by the other attorneys for TSF.

The impartiality of a judge is presumed to exist; a party seeking recusal bears a substantial burden to prove otherwise. United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006). Whether to recuse is committed to the court's sound discretion. Dossett v. First State Bank, 399 F.3d 940, 953 (8th Cir. 2005).

The disqualification of a judge for personal bias or prejudice under 28 U.S.C. §455 is at least somewhat limited by the "extrajudicial source doctrine." Liteky v. United States, 510 U.S. 540 (1994). "All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id*. at 556.

9

There is nothing in the record to even suggest bias stemming from any extrajudicial source. Of course, any judge presiding in a given case reaches opinions about parties and counsel. I readily concede that I did that in connection with the bankruptcy appeals. I have not done that in the present case. I do not know anything about present counsel for TSF or Hoich. I have never met any of the parties. As far as I know, I have never met these attorneys. Reaching such opinions would especially be expected when the cases were so extremely protracted and so bitterly fought at every stage as the cases in bankruptcy and the appeals have been. A judge reaches opinions about conduct and occasionally acts to prevent misconduct or miscarriages of justice. That is the nature of being a judge. There is in this case no actual deep-seated antagonism. Nor is there any such antagonism that is "unequivocal." Any observations that I have made are insufficient to show any degree of deep-seated antagonism. As I have stated, I should have been more careful in my language dealing with the two "settlements." I have also previously stated in open court that I do not regard the pending motions to recuse as frivolous. I can understand the concerns of the attorneys in this case and the concerns of TSF and Hoich.

TSF and Hoich "must allege specific, non-conclusory facts showing a personal bias or prejudice against [it] that emanates from an extrajudicial source as distinguished from a judicial source, i.e. court proceedings." United States v. Kirkpatrick, 2005 WL 2989314, *citing* Youn v. Track, Inc., 324 F.3d 409, 423 (6th Cir. 2003). The essence of the complaints of TSF and Hoich is that my orders and opinions show a bias against TSF and one of its attorneys, Jerrold L. Strasheim (who will apparently be a witness in this case). "Adverse judicial rulings, however, 'almost never' constitute a valid basis for recusal; the proper recourse for a dissatisfied litigant is appeal." Dossett v. First State Bank, 399 F.3d 940, 953 (8th Cir. 2005), *citing* Liteky, 510 U.S. at 555. TSF has already appealed all my decisions on the seven appeals from bankruptcy court and the United States Court of Appeals for the Eighth Circuit will decide if I ruled correctly in each of the seven cases. I did rule for TSF in a very important case with highly disputed legal principles.

The job of a trial judge is often frustrating, especially when counsel do not act in a professional manner. We know that judicial remarks and comments that are critical or

10

disapproving, or even hostile to, a party or counsel, or to a party's case, ordinarily do not support a motion to disqualify a judge for personal bias or prejudice. Liteky, 510 U.S. at 555.

We know also that "even though §455 has no express timeliness requirements, claims under §455 will not be considered unless timely made." In re Kansas Public Employees Retirement System, 85 F.3d at 1360.  In that case, a petition for a writ of mandamus (attempting to disqualify a federal judge) was untimely since it was filed more than one year after the petitioner first learned the claimed relevant facts underlying the motion.  85 F.3d at 1360-61.  As a matter of law, the motions in this case are not timely.  They should be denied on that basis alone.  The trial has been moved up by one day and **will commence** on August 1, 2007.

They also should be denied on the merits for the reasons set forth above.

Now, therefore,

IT IS ORDERED that the motions to recuse (Docs. 109 and 111) are denied.

Dated this 25th day of July, 2007.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY
DEPUTY
(SEAL)

11